NON-CONFIDENTIAL VERSION

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S.,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>            Defendant,<br><br>    and<br><br>REBAR TRADE ACTION COALITION,<br><br>            Defendant-Intervenor. | Before: Hon. Gary S. Katzmann, Judge<br><br>Court No. 20-00065<br><br>NON-CONFIDENTIAL VERSION<br><br>Business Proprietary Information Removed from Pages 4 and 5 and Attachments 2 and 3 |

POST-ARGUMENT SUBMISSION
OF DEFENDANT-INTERVENOR REBAR TRADE ACTION COALITION

John R. Shane, Esq.
Maureen E. Thorson, Esq.

WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to Rebar Trade Action Coalition*

Dated: May 26, 2021

Ct. No. 20-00065 NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ADDITIONAL REBUTTAL ............................................................................................... 1

    A. Presence of Regasified Liquid Natural Gas ("LNG") in Botas's Pipelines ............................................................................................................ 1

    B. Habas's Responses to the Court's Questions 6 and 7 ............................................. 2

III. CONCLUSION ................................................................................................................... 5

## I. INTRODUCTION

Defendant-Intervenor Rebar Trade Action Coalition ("RTAC") respectfully submits the following additional, limited rebuttal regarding the Plaintiff's April 27, 2021 response to the Court's oral argument questions, and May 19, 2021 oral argument presentation.

## II. ADDITIONAL REBUTTAL

### A. Presence of Regasified Liquid Natural Gas ("LNG") in Botas's Pipelines

As RTAC has noted, Habas has waived the argument that the IEA data reflects pricing for natural gas inclusive of re-gasified LNG. Def.-Intervenor Rebar Trade Action Coalition's Resps. to Questions for Oral Arg. (Apr. 27, 2021), ECF No. 39 at 10 ("RTAC's Responses"). The claim is also unexhausted; Habas made no argument below that the IEA data was LNG-inclusive, much less that it was rendered inappropriate by inclusion of re-gasified LNG. Def.-Int. Rebar Trade Action Coalition's Resp. Br. (Nov. 10, 2020), ECF No. 27 at 15. Moreover, because re-gasified LNG flows through Botas's pipelines, the argument is not supportive of Habas's case. RTAC's Responses at 11-12.

In preparing for oral argument, RTAC's counsel found additional information confirming that re-gasified LNG flows through Botas's pipelines. *See* Letter from Ministry of Trade, Directorate Gen. for Exports, Republic of Turkey to Sec'y Commerce, re: *First Administrative Review of Countervailing Duty Order on Steel Concrete Reinforcing Bar from Turkey: Questionnaire Response of the Government of Turkey* (Apr. 15, 2019) at Exhibit 2, p. 35, C.R. 18-44, P.R. 21-42 (stating that re-gasified LNG is dispatched into the Russia-Turkey natural gas pipeline) (appended to this submission as **Attachment 1**).

1

B. **Habas's Responses to the Court's Questions 6 and 7**

As Government counsel observed at argument, the challenges that Habas raises to Commerce's adjustment of the IEA data are unexhausted, waived, or both.

Habas argues that Commerce inappropriately (1) treated Gazprom export volume figures as expressed in standard cubic meters, (2) relied on a 2014 figure, and (3) averaged the IEA industrial and power generation prices. *See* Resp. of Pl. Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S., to Ct.'s Letter of April 15, 2021 (Apr. 27, 2021) at 12-14, ECF No. 36 ("Habas's Responses"). Habas did not challenge these aspects of Commerce's methodology below, although they were apparent from the preliminary results. *Compare* Letter from Law Offices of David L. Simon, PLLC to Sec'y Commerce, re: *Steel Concrete Reinforcing Bar from Turkey; Habas case brief* (Dec. 6, 2019) at 1-33, P.R. 131-132, *with* Memorandum from Kathryn Turlo, to Mark Hoadley, re: *Analysis and Calculations for the Preliminary Countervailing Duty 2017 Administrative Review* (Sept. 6, 2019) at 4-6 and Attachment 2 (Tabs "Russia AUV" and "NG Benchmark"), C.R. 90-92, P.R. 108-109 ("Preliminary Calculation Memo") (appended to this submission as **Attachment 2**).

Nor did Habas challenge these aspects of the methodology in its opening brief. *Compare* Mem. in Supp. of Mot. of Pl. Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. for J. on the Agency R. Pursuant to Rule 56.2 (Aug. 21, 2020), ECF No. 23 ("Habas's Brief"), *with* Habas's Responses at 12-14. Rather, it vaguely stated that Commerce's adjustments took the IEA benchmark "further away from empirical accuracy," without identifying any specific aspects of the agency's methodology as problematic. Habas's Brief at 38-39. As such, Habas has also waived the other challenges to Commerce's adjustment methodology raised in its responses to the Court's questions. Habas's Responses at 9-14.

Habas's challenges are also unpersuasive on their merits. While Habas challenges Commerce's adjustments as overly precise, Commerce started from whole numbers, or figures to one decimal place (3.5, 18.5, 24, and 36). *Id.* at 9-11; Memorandum from Nancy Decker, to Mark Hoadley, re: *Analysis and Calculations for the Final Results of the 2017 Countervailing Duty Administrative Review* (Mar. 13, 2020) at Attachment 1 (Tab "Russia NG %"), C.R. 104-105, P.R. 144-145 ("Final Calculation Memo") (appended to this submission as **Attachment 3**). That division of these numbers produced figures to two decimal places is not evidence of undue precision, but the result of simple math. Moreover, Commerce determined the figures that Habas questions through reasonable interpretation of the charts included in the Eurostat report and the accompanying text. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Steel Concrete Reinforcing Bar from Turkey: RTAC's Benchmark Submission* (Aug. 7, 2019) at Exhibit 6 , P.R. 79-81 ("RTAC Benchmark Submission").

While Habas argues that Commerce's reliance on the Eurostat report to adjust the IEA data should have compelled selection of Eurostat import statistics as the benchmark, the Eurostat report does not purport to explain how Eurostat, or individual European countries, collected and reported import statistics. *Id.*; *see also* Habas's Responses at 11. The problems that Commerce identified with the Eurostat (and Comtrade) statistics thus remain. *See also* Issues and Decision Memorandum accompanying *Steel Concrete Reinforcing Bar from Turkey*, 85 Fed. Reg. 16,056 (Dep't Commerce Mar. 20, 2020) (final results of countervailing duty admin. rev.; 2017) at 18-26, P.R. 143. As to Habas's argument that Commerce should have further adjusted IEA data for the impact of imported LNG on European gas pricing, Habas's Responses at 11-12, nothing in the IEA report indicates that it reflects trade in LNG, so no additional adjustment for the impact of imported LNG is necessary. *See, e.g.*, RTAC Benchmark Submission at Exhibit 2.

3

Habas argues that the record does not contain the 2014 figure used in Commerce's calculations. Habas's Responses at 13-14. But the figure is in the RTAC Benchmark Submission at Exhibit 6, p. 12, just where Commerce indicated. Preliminary Calculation Memo at 5 & n.24. And while Habas challenges the figure as outdated, it points to no more recent number on the record. Habas's Responses at 13-14.

Habas argues that Commerce erred in averaging the IEA report's power generation and industrial user prices, but both power generation and industrial usage accounted for a substantial portion of Habas's natural gas purchases. Habas's Responses at 14; Section III Questionnaire Response of Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. (Apr. 15, 2019) at Exhibit 6, p. 1, C.R. 6-17, P.R. 20 (usage by Habas's [          ] divisions).

Finally, Habas challenges Commerce's reliance on the Gazprom annual report to derive an average unit value for Russian exports. Habas's Responses at 12-13. The record does not suggest that Gazprom's reporting of the actual volumes and prices of Russia's exports is politically distorted or falsified. Further, it was to remove the distorting influence of Russia's politically-motivated pricing that Commerce relied on this data in the first place. Similarly, while Habas argues that Russia's overall export pricing was distorted by its exports to Turkey, it was precisely to remove the impact of distorted Russian pricing from the data set that Commerce made its adjustments. As for Habas's complaint that Commerce treated Russian export volumes as expressed in standard cubic meters rather than unadjusted cubic meters, the company's margin rises if recalculated using Habas's [   ] m3 to kWh conversion factor. Habas's Responses at Attachment 1, p. 3. Specifically, the kWh volume in the "Russia AUV" tab of Attachment 1 to the Final Calculation Memo would become [          ], and the AUV [      ]. Using this AUV as figure "H" in the "NG benchmark" tab would produce a benchmark price (figure "K")

4

Ct. No. 20-00065    BUSINESS PROPRIETARY INFORMATION    NON-CONFIDENTIAL VERSION
HAS BEEN DELETED

of [    ]; using this value in the "Benchmark Price" Column of the "NG for LTAR" program in place of the current benchmark increases the program margin to [  ]%.

### III.  CONCLUSION

For the reasons above and provided in RTAC's brief, the Government's brief, and by RTAC and the Government at oral argument, we respectfully submit that Commerce's determination should be sustained in full.

Respectfully submitted,

*/s/ John R. Shane*
John R. Shane, Esq.
Maureen E. Thorson, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to the Rebar Trade Action Coalition*

Dated: May 26, 2021

CERTIFICATE OF COMPLIANCE

Pursuant to the Court's May 19, 2021 notice regarding post-argument submissions, ECF No. 41, the undersigned certifies that this written response complies with the word limitation requirement. The word count for Post-Argument Submission of Defendant-Intervenor Rebar Trade Action Coalition, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 1,240 words.

*/s/ John R. Shane*
(Signature of Attorney)

John R. Shane
(Name of Attorney)

Rebar Trade Action Coalition
(Representative Of)

May 26, 2021
(Date)